Sutliit, J.
The single question of title, is the one upon which all others raised upon the record in this case, necessarily depend. If the defendant acquired from the plaintiff, whether immediately by deed of grant from him, or only mediately by deed from the grantee of the plaintiff, he had the title, the right so parted with by the plaintiff, and acquired by himself, to flow the land. But, on the other hand, if this incidental right to flow the plaintiff’s land below Indian Run was never conveyed by the plaintiff, nor acquired by the defendant, the plaintiff’s right of action for any damage so occasioned him, can not be disputed.
How, then, stands the statement of facts, in regard to this single point? The plaintiff gave in evidence the deed by himself and others, of April 5, 1839, to the canal company, their successors and assignees, etc., conveying, in fee simple, the mill-site in question, under the following description, after describing the several tracts of land embracing, and contiguous to the same, “ commonly called Seaburg and Reed’s mill-site.” Then follows a description of certain other tracts of land, and a right of way through the same, concluding as follows: “for the purpose of constructing thereon, a canal, towing-paths, and other works necessarily therewith con *271 nected; provided the said company shall not inundate the lands belonging to the said Seaburg, below the mouth of Indian Run. In the event of their inundating said land, said Seaburg reserves the right to claim damages.”
Now, it here appears, in the first place, that the mill-site was sold, as well as the right of way for the contemplated object, a permanent canal. The flowing of the water is mentioned as a contemplated incident of the grant, and inasmuch as the principal object of the dam and flowing of the water was the perpetual supply of the canal, it is not to be supposed that the continuance of this grant of the incident, any more than that of the land or bed of the canal, was dependent upon, or restricted by the fact or event of the dam occasioning the inundation of the lands mentioned, “ below the mouth of Indian Run.” And again: such a construction of the grant is not only opposed to the object contemplated, as expressed in the deed, and shown by the reasonable intention of the parties, naturally deducible therefrom; but there is an express provision in the deed contemplating the flowing of the land in question. In this contingency there is this express provision in the deed in favor of the plaintiff: “ In the event of their inundating said land, said Seaburg reserves the right to claim damages.”
The grantees of the plaintiff, the canal company, might, under the provisions of their charter, the statute law of the State, acquire, by absolute purchase, all the means and facilities for the construction of their canal and the exercise of their purchase, if they could agree with all the respective proprietors; or, in case the owner in any case would not agree to sell at what they considered a fair value, the company might exercise the right of eminent domain, with which invested by the State, for the -purpose of constructing the public improvement, by appropriating the private property for-such purpose, on paying the damages claimed and assessed, as prescribed, by the legislature. And where the property was appropriated by the company, if the owner made no claim for damages, the appropriation was, as in the case of public roads, etc., considered absolute and good; and no action in *272 trespass lay for such appropriation. Such exercise of the right of eminent domain, under the authority of the State, was lawful, and no right of action could arise therefor as for an unlawful act. The right of action on the part of the private owner was simply to recover his just compensation, in the manner prescribed by the legislature, occasioned him by such lawful act on the part of the company, in so legally appropriating his property, or injuring it, by the lawful construction of the public improvement.
This right of appropriation -without statutory proceedings, the plaintiff, to the full extent of his deed of sale, obviously surrendered to the company. He conveyed to them the land and the water-power, and privilege -to erect and perpetually maintain such a dam as necessary for their purposes, and such as was by the grantees built, and has ever since been maintained, with a single reservation. And what was that reservation ? Not that the company should never maintain a dam at such elevation as to occasion an inundation of these lands. But the grant was without any reservation, providing the lands below Indian Run should not be inundated by reason of the dam to be erected; and “ in the event of their inundating said land, said Seaburg reserves the right to claim damages.” This is the precise reservation, in the language of the deed, which the plaintiff inserted, after granting the right to build and perpetually maintain the dam. But it is to be observed, this clause of contingency, unlike that in a mortgage, is not one containing ,a stipulation that, upon the happening of the event, the deed shall cease to be operative, and become void. The clause of contingency, on the contrary, leaves the operative force of the deed as a conveyance in full force, and only annexes the condition of the event, that the grantor, upon the happening of the contemplated event, shall have the right, if he sees fit to exercise it, “ to claim damages” therefor. He could not reserve a right which he did not possess independent of the grant. The only right which he would have had to claim damages, if the conveyance had never been made, and the property had been appropriated for the building of the dam and flowing the land, *273 would have been to prefer his claim against the company, and. procure an appraisal, and upon obtaining an estimate of damage sustained, as provided by their charter, to recover the same as his just compensation. This, then, is the right which the plaintiff reserved; and this right he, therefore, had in the event of their inundating said land, which it is said happened. But the plaintiff was not constrained to exercise this reserved right. It was entirely at his own option to as■sert his right by preferring his claim for damages against the company, as prescribed, and have an appraisement, and, if found that he had sustained damages, to recover the same of the company, or to forego the assertion of that right; but in neither case could the conveyance, by him so made, be at all invalidated. Eor if the plaintiff had seen fit to assert this right, and make his claim, the estimate of damages to have been made by the appraisers must have been necessarily for a perpetual maintenance of the dam and flowing of the lands, and such recovery would have been in full satisfaction for the same, and a perpetual bar to any future or further claim in that regard. And if the plaintiff saw fit to waive the assertion of his right so reserved, that waiver toward the company, the same as its assertion, ought in equity, as well as in law, to be conclusive of the plaintiff’s right of action in the premises against the defendant, as a Iona fide purchaser from, and .grantee of the canal company, under such state of facts.
We think, therefore, that there is error in the record, as shown by the refusal of the district court to charge the jury as requested, as w'ell as in the instructions so given by that court to the jury. And for such error, the judgment of that court must be reversed, and the cause remanded for further proceedings.

Judgment accordingly.

Brinkerhoff, C.J., and Scott, Peck and Gholson, JJ., concurred.